IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN DRISCOLL, in his capacity as COURT-APPOINTED RECEIVER OF ALPHAMETRIX GROUP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> JURIS KINS and DAVIS MCGRATH, LLC <br><br> Defendants. | JURY DEMANDED <br><br> Case No. _____ <br><br> Judge _____ |

**COMPLAINT**

Kevin Driscoll, not personally but solely in his capacity as Court-Appointed Receiver ("Receiver") of Alphametrix Group, LLC ("AMG"), brings this case against AMG's former lawyers, Juris Kins and his law firm, Davis McGrath, LLP (together, "Defendants"). As explained in detail below, Defendants facilitated self-dealing transactions that enriched AMG's management – including Kins's son – at the expense of Defendant's client, AMG. Defendants committed legal malpractice and owe damages for the harm their misconduct caused to AMG.

**Parties**

1. Plaintiff is the court-appointed receiver of AlphaMetrix, LLC ("AlphaMetrix"), AMG and their affiliates. Plaintiff is the successor to the original court-appointed receiver of AlphaMetrix and AMG, Deborah Thorne, who was appointed by order of the Hon. Joan Lefkow in *U.S. Commodity Futures Trading*

*Commission v. AlphaMetrix, LLC,*, No. 13-cv-7896 ("Receivership Case") on December 18, 2013.

2. Defendant Juris Kins ("Juris") is a lawyer and an attorney with Davis McGrath, LLC. From at least 2006 through the appointment of the Receiver, Juris served as counsel to AMG and AlphaMetrix. Juris is also the father of Aleks A. Kins ("Aleks"), who was the former Managing Member of AMG and President and Chief Executive Officer of AlphaMetrix.

3. Defendant Davis McGrath, LLC is an Illinois limited liability company engaged in the practice of law. From at least 2006 through the appointment of the Receiver, Davis McGrath served as counsel to AMG and AlphaMetrix.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1367(a) and the doctrines of supplemental and ancillary jurisdiction, as well as the Federal Receivership Statutes (28 U.S.C. §§ 754 and 959).

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2).

## Factual Allegations

**AMG and the Defendants**

6. AMG was a financial technology firm that held itself out as providing transparency and "verifiable trust" to investors and managers of commodity pools and hedge funds. AMG was the sole member and manager of AlphaMetrix, which offered a platform for investments in commodity pools.

7. From 2005 through December 18, 2013, Aleks was the Managing Member of AMG (and, by extension, of AlphaMetrix). Aleks used that position to install friends and family members in AMG and AlphaMetrix management. These included: (a) Charley Penna, Aleks's best friend, who was Chief Risk Officer and, later, Chief Compliance Officer of both entities; (b) George Brown, Aleks' brother-in-law, who was Chief Financial Officer of both entities; and (c) Geoff Marcus, Aleks's wife's best friend, who was "Chief Strategic Officer" of both entities.

8. From 2005 through December 18, 2013, Defendants were lawyers for AMG and AlphaMetrix. Acting as a Davis McGrath shareholder, Juris served as those entities' general counsel, advising and representing them in connection with everything from financial contracts, a dispute with a former employee, and charges of software copyright infringement. As alleged in detail below, Juris also represented AMG in connection with loans made to Aleks, Penna, Brown and Marcus.

9. Although the Receiver has not retained Defendants, Juris has an appearance on file for AMG and AlphaMetrix in the Receivership Case. On information and belief, Juris is also providing legal advice and assistance to the attorneys representing Aleks in the case the Receiver has brought against him (*Thorne v. Kins*, et al., No. 14-cv-02472).

10. During 2012 and 2013, AMG paid Davis McGrath $39,574.64 for services supposedly rendered to AMG. Davis McGrath also submitted an invoice to

3

AMG dated October 30, 2013 in the amount of $1,735 for services supposedly performed in September 2013.

**Aleks's Loans from AMG**

11. Aleks started borrowing money from AMG in January 2006. These loans were not formally documented. Beyond any terms imposed by law, the loans did not have any repayment deadlines, interest rates or default protection for AMG. By March 2012, Aleks's total debt to AMG stood at $1,156,877.37. On information and belief, Juris knew about Aleks's loans from AMG from the time they started.

12. AMG's auditor became increasingly concerned about such a large, undocumented receivable from the company's CEO and requested that it be memorialized. In coordination with Aleks and Brown, Juris prepared a note for Aleks, which was dated and signed on March 15, 2012 ("Aleks 2012 Note"). This Note required repayment of $1,156,877.37 in monthly installments of $7500 with a final balloon payment due on December 31, 2015, and set interest at the rock bottom "Applicable Federal Rate." The Note gave AMG certain rights in the "Event of Default," including the right to demand (and sue for) immediate payment of the outstanding note balance. It defined "Events of Default" to include Aleks' failure to make a payment under the note after five days' notice or his inability "to pay his debts as they mature or the insolvency, appointment of a receiver, bankruptcy, assignment for the benefit of creditors or commencement of any other type of creditor liquidation or workout proceeding."

13. Aleks began paying AMG $7500 each month as required by the Aleks 2012 Note. At the same time, he continued taking new loans from AMG, which totaled $141,666 during 2013. These new loans were not documented. On information and belief, Juris knew this undocumented loan existed and was aware of at least its approximate amount.

**The Other Officers' Loans from AMG**

14. From 2011 through September 2013, Marcus borrowed $223,422 from AMG. This was an undocumented obligation and was thus payable on demand from AMG. On information and belief, Juris knew this undocumented loan existed and may have known at least its approximate amount.

15. By mid-2013, AMG had also loaned $50,000 to Penna and $41,666.66 to Brown. These loans were not documented and thus payable on demand from AMG. On information and belief, Juris knew these undocumented loans existed and may have been aware of at least their approximate amounts.

**AMG's Collapse and the Loan Restatements**

16. In their 2011 and 2012 audits, AMG's auditor (BDO) stated concerns about AMG's going-concern value. By 2012, AMG was experiencing serious cash flow problems, which only kept getting worse. By February 2013, AMG and AlphaMetrix were insolvent; they were unable to pay obligations as they became due and had almost $4.2 million of payables over 90 days past due. AMG's primary lender, White Oak Global Advisors, LLC ("White Oak"), claimed AMG was in

violation of certain financial covenants and demanded (and received) additional guarantees.

17. In his role as AMG's counsel, Juris knew about the concerns in BDO's 2011 and 2012 audits. He also knew about AMG's worsening cash flow problems, and White Oak's escalating demands. By no later than August 31, 2013, Juris knew or was deliberately ignorant of the fact that AMG was insolvent.

18. Juris nonetheless helped Aleks, Marcus, Brown and Penna amend and restate the terms of their obligations to AMG in a manner that effectively made them worthless; thus benefitting them personally to the detriment of AMG and its creditors.

19. In coordination with Juris, Aleks prepared an "Amended and Restated Promissory Note" ("Aleks Amended Note") that purported to "replace in its entirety" the Aleks 2012 Note. The Aleks Amended Note was for a principal amount of $1,038,597, the amount owed by Alek to AMG as of that date which included previously undocumented demand loans of $141,666 made during 2013. Although dated September 1, 2013, the Aleks Amended Note was in fact prepared later in September 2013 and executed on or around September 30, 2013.

20. The terms of the Aleks Amended Note effectively made it a worthless asset to AMG at a time when AMG was insolvent and AMG had an obligation to maximize its assets for the benefit of its creditors. The Aleks Amended Note eliminated the obligation to make monthly payment that existed before the Note was "restated and amended,", made the undocumented loans (which had been

payable on demand) no longer subject to immediate demand and payment, and for the balance of the debt extend the due date from December 31, 2015 to December 31, 2023, making any prospect of being able to recover payment thereon illusory.

21. The Aleks Amended Note even eliminated default protection that AMG enjoyed under the Aleks 2012 Note, limiting "Event[s] of Default" to "[t]he filing of bankruptcy or assignment for the benefit of creditors *by Kins*" (emphasis added). The Aleks Amended Note thus deprived AMG of default protection even if Aleks was the subject of an involuntary bankruptcy (let alone any other type of creditor proceeding).

22. AMG received nothing of value in exchange for the value of the loans as they existed before the Juris assisted in the amendments.

23. As alleged above, by September 2013, Marcus, Penna and Brown respectively owed AMG $223,422, $50,000 and $41,666.66. These loan were undocumented obligations and thus, as a matter of law, payable on demand from AMG. In coordination with Juris, Aleks and Brown drafted Promissory Notes for Marcus, Penna and Brown in the foregoing principal amounts ("Officer Notes"). These Officer Notes had the same terms as the Aleks Amended Note: no payment required for more than ten years, interest at the lowest feasible rate, and virtually no default protection for AMG. Juris thus worked with the officers to render AMG assets, i.e. the debts Officers owed to AMG, valueless.

24. The Officer Notes were dated September 1, 2013, but, like the Aleks Amended Note, were prepared and executed later. AMG received nothing of value in

exchange for the value of the loans as they existed before the Juris assisted in the documentation of the Officer Notes.

25. AMG lost its ability to demand payment of the undocumented loans, collect monthly payments from Aleks on the 2012 Note (the cessation of which would have put him in default, making the full amount due immediately), or receive Aleks's balloon payment at the end of 2015. The 2023 maturity dates on the Officer Notes and Aleks Amended Note, as well as the narrow default provisions, in essence, made the possibility of AMG getting value from those Notes illusory. The preparation and execution of the Aleks Amended Note and the Officer Notes by Juris thus effectively removed assets from the balance sheet of an insolvent company with a face value of more than $1.5 million, transferred those assets to company insiders and removed the value they otherwise had at the time.

26. Until at least the appointment of the Receiver on December 18, 2013, AMG and AlphaMetrix were adversely dominated by Aleks, Penna, Brown and Marcus.

## Count I

### Against Juris Kins and Davis McGrath for Legal Malpractice

27. Plaintiff realleges paragraphs 1-26 and incorporates them into this Count I.

28. Defendants had an attorney-client relationship with AMG.

29. As counsel to AMG, Defendants owed AMG duties of reasonable care and loyalty.

30. By assisting in the preparation of the Aleks Amended Note and the Officer Notes and otherwise failing to protect AMG in connection with the Note transactions, Juris breached his duty of reasonable care to AMG.

31. By assisting in the preparation of the Aleks Amended Note and the Officer Notes and otherwise failing to protect AMG in connection with the Note transactions, Juris breached his duty of loyalty to AMG.

32. Because Juris was acting within the scope of his employment, Davis McGrath is vicariously liable for Juris's misconduct.

33. As a result of Defendants' misconduct, AMG has incurred damages in the amount of the obligations represented by the revised notes and the fees paid to Davis McGrath.

**WHEREFORE**, Plaintiff prays for the following relief against Defendants:

(a) actual damages in an amount to be determined at trial;

(b) pre-judgement interest;

(c) costs; and

(d) all other just and proper relief.

Respectfully submitted,
KEVIN DRISCOLL, in his capacity as
COURT-APPOINTED RECEIVER OF
ALPHAMETRIX GROUP, LLC


By: /s/Robert Michaels
One of His Attorneys

Robert Michaels (6203462)
ROBINSON CURLEY & CLAYTON, P.C.
300 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
(312) 663-3100
rmichaels@robinsoncurley.com