IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN DRISCOLL, in his capacity as COURT-APPOINTED RECEIVER OF ALPHAMETRIX GROUP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> JURIS KINS and DAVIS McGRATH, LLC, <br><br> Defendants. | Case No. 1:16-cv-09359 <br><br> Judge: John Z. Lee <br><br> Magistrate Judge: |

**DEFENDANTS' MOTION TO DISMISS**

Defendants, JURIS KINS ("Juris") and DAVIS McGRATH, LLC ("Davis McGrath")(collectively "Defendants"), by and through their attorneys, Thomas P. McGarry and Michael G. Ruff of Hinshaw & Culbertson LLP, pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully request that this Court dismiss Plaintiff's Complaint, and in support, states as follows:

## I. INTRODUCTION

Plaintiff is court appointed receiver for AlphaMetrix Group, LLC ("AMG"), a financial technology company. Plaintiff's single count Complaint for legal malpractice is premised upon legal services Defendants, Davis McGrath, LLC and more specifically attorney Juris Kins, provided in connection with the drafting of restructured loan agreements between AMG and its officers.

Plaintiff's Complaint makes several superfluous factual allegations, non-germane to the legal malpractice action in attempt to sully Juris regarding his son's, Aleks Kins' ("Aleks"), operation of his derivatives trading company AMG. The only allegations relating to any legal services provided by Defendants to AMG are limited to paragraphs 19 through 23 of Plaintiff's

1

Complaint. Those paragraphs essentially allege that, Juris represented AMG in connection with the drafting of amended promissory notes for loan obligations due from Aleks and other AMG officers. Those paragraphs also allege that Juris' legal services resulted in the restructuring of the loan obligations due AMG in terms favorable to the officers and to the detriment of AMG, without due consideration being given.

First, Plaintiff does not state a claim for legal malpractice against Defendants. Plaintiff does not allege that Juris was negligent in the actual drafting, but rather that Juris was simply following the instructions and business decisions of AMG acting through its officers, who were in turn following the recommendations of AMG's auditors. Moreover, Plaintiff's claim that the amended notes lacked consideration is contrary to the plain terms of the notes which actually improved the collectability of the outstanding obligations.

Second, Plaintiff has already litigated and collected a very favorable settlement regarding the AMG officer loan obligations in related litigation with the AMG officers. Following lengthy negotiations and taking into account the inherent risks of litigation and the possibility of not collecting on the notes (whether deemed amended or not), Plaintiff/Receiver settled all of its claims against the AMG officers, including obligations under the original and amended notes for what it deemed the fair value of the AMG officers' loan obligations. Plaintiff has not pleaded any actual damages proximately caused by Defendant's alleged conduct.

Third, Plaintiff does not have standing to pursue its current claims, claims which have been effectively assigned to White Oak Global Advisors, LLC ("White Oak").

## II. SUMMARY OF PLEADINGS AND RELATED PROCEEDINGS

### Current Pleadings

Plaintiff's malpractice claim is premised upon Juris' proofreading of an amended loan agreement between Aleks and AMG. Aleks (Juris' son) is the former Managing Member of AMG and the former President and Chief Executive Officer of AMG and AlphaMetrix, LLC ("AlphaMetrix"). (Comp. ¶2). AMG was the sole member and manager of AlphaMetrix, which offered a platform for investments in commodity trading pools and was AMG's primary source of revenue. (Comp. ¶6). There are similar allegations made about Juris' involvement in the review of promissory notes for smaller loan amounts due AMG by other AMG principals/officers – Chief Financial Officer George Brown ("Brown"), Chief Risk Officer and Compliance Manager Charley Penna ("Penna"), and Chief Strategic Officer Geoff Marcus ("Marcus"). (Comp. ¶23).

As alleged, Aleks began drawing loans from AMG in 2006. (Comp. ¶11). In early 2012, AMG's auditor BDO Seidman became concerned about Aleks' loan obligations and advised AMG officers to have it memorialized and appropriately reflected in AMG financial statements. (Comp. ¶12). Following the auditor's advice, Aleks entered executed a promissory note on March 15, 2012 for a balance of $1,156,877.37 (the "First Note"). A true and copy of the First Promissory Note is attached as **Exhibit A**. The loan provided for monthly payments of $7,500, an interest rate equal to the federal rate, and a single balloon payment at the maturity of the loan on December 31, 2015. (Ex. A).

In approximately August or September of 2013, AMG, operating through Aleks and other officers, made the business decision to restructure Alek's First Note ("Second Note"). (Comp. ¶19). A true and correct copy of the Second Note is attached as **Exhibit B**. According to

Plaintiff's Complaint, AMG officers prepared the Second Note with the help of Juris. (Comp. ¶19). Apart from adjusting the principal amount for Alek's monthly payments, the Second Note (1) extended the maturity date of the loan from December 31, 2015 to December 31, 2023, (2) eliminated the monthly payment obligation, (3) included annual interest rate equal to the federal rate, and (4) changed the definition of a "default" under the loan's terms. (See Ex. B). Importantly, the Second Note also contained a provision that called for the early payoff of the loan if AMG successfully performed as anticipated over the next couple of years, a term which was absent from the First Note. (*Compare* Exs. A and B). This provision obligated Aleks to pay 50% of any profit distributions made to him from AMG until the balance was repaid. (Id.)

Plaintiff's Complaint further alleges that in September 2013 the AMG Officers also enlisted Juris help in drafting promissory notes for other undocumented loans to Marcus ($223,422), Penna ($50,000), and Brown ($41,666.66), which are collectively referred to as "Officer Notes" in the Complaint. (Comp. ¶23). The Officer Notes had terms similar to Alek's Second Note with a maturity date of December 31, 2023, annual interest rate equal to the federal rate, and an early payoff provision. (*Id.*).

**AMG's Operations Cease and Receivership Litigation**

On October 10, 2013, at the instruction of the CFTC, Aleks issued a letter to AMG's investors announcing to them that AMG was experiencing significant cash flow problems and had liabilities that greatly exceed its assets. (*See* Plaintiff/Receiver's Amended Complaint in the AMG Officers' Case, **Exhibit C** hereto, at ¶54). That same day, White Oak, a large creditor of AMG, declared a default on its multimillion dollar loan obligation. Shortly thereafter, on November 4, 2013, the CFTC initiated an action which appointed Plaintiff the receiver of AMG and AlphaMetrix – captioned *U.S. Commodity Futures Trading Commission v. AlphaMetrix,*

4

*LLC et al.*, No. 13-cv-7896 on December 18, 2013 (the "**Receivership Case**"). Plaintiff, as the receiver for both AMG and AlphaMetrix, then filed a separate lawsuit against former officers of AlphaMetrix, including Aleks, Penna, Marcus and Brown, under Case No. 14-cv-2472 (the "**AMG Officer Case**"). The Amended Complaint in the AMG Officer Case asserts six counts against Alek, Brown, and/or Penna for various causes of actions relating to their loan obligations due AMG (Counts V – XI). (Ex. C).

Among other allegations in the AMG Officer Case, Plaintiff/Receiver's Amended Complaint alleged that the 2013 amendments of Alek's First Note and the other AMG officers' obligations were unsupported by consideration. (Ex. C, Counts V-VII, XI). Plaintiff/Receiver specifically sought to revoke the 2013 notes (i.e., Alek's Second Note and the other Officer Notes) and enforce and collect on Alek's 2012 note and the other Officers' undocumented loans.

Those underlying claims against the AMG Officers were resolved by way of a significant settlement agreement ("Settlement Agreement"), which was vetted and approved by this Court on October 9, 2016 ("10/9/16 Order") pursuant to Plaintiff/Receiver's motion. True and correct copies of the Plaintiff Motion for Approval of the Settlement Agreement (including the Settlement Agreement as Exhibit 1 thereto) and the 10/9/16 Order are attached as **Exhibits D** and **E** respectively. In exchange for a full release and settlement of its claims against the AMG officers and their obligations due AMG, the AMG officers, through their insurer, agreed to pay AMG four million dollars ($4,000,000). Judge Milton Shadur entered an order of dismissal in the AMG Officers' Case on November 22, 2016. Shortly before the anticipated dismissal, Plaintiff then initiated this lawsuit against Juris and his firm for his alleged involvement in drafting of notes relating to those very same loan obligations.

Importantly, in the Receivership Case, Plaintiff/Receiver litigated the issue of who has a priority interest in AMG's tort claims. This Court, pursuant to its February 26, 2016 order ("2/16/16 Order"), well before the conclusion of the AMG Officers' Case, determined that AMG's creditor White Oak had a perfected security interest in AMG and AlphaMetrix's tort claims, including any proceeds of such litigation. (2/16/16 Order, **Exhibit F**). And, that the AMG investors' interests in such claims were subordinated to White Oak's, such that the Court raised "the question of whether the Receiver's prosecution of the [AMG Officers' Case] should continue. This case was filed for the benefit of investors in AlphaMetrix. To the extent the Receiver is as a practical matter now litigating on behalf of White Oak, the CFTC should consider whether it has achieved all possible relief for the investors and whether this litigation should be terminated with an assignment of the claims to White Oak." (Id. at p. 11).

### III. APPLICABLE LAW

Plaintiff asserted that this Court has ancillary jurisdiction of AMG's tort claims. Accordingly, Illinois substantive law governs AMG's purported claims. "It is well established that the elements of a legal malpractice action in Illinois are: (1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause; and (4) damages." *Lopez v. Clifford Law Offices, P.C.*, 362 Ill. App. 3d 969, 974–75, 841 N.E.2d 465 (1st Dist. 2005).

### IV. ARGUMENT

**A. Plaintiff has not alleged any malpractice.**

As a threshold issue, Plaintiff has not alleged any legal malpractice on the part of the Defendants. Plaintiff essentially alleges that Juris assisted in the drafting of amended and restated

6

promissory notes for AMG/AMG officers consistent with the instructions of his client (AMG) acting through its duly appointed officers. That is not legal malpractice.

It is well settled in Illinois that an attorney is obligated to follow the instructions of his client. *Trustee of Schools TP42 North v. Schroeder*, 2 Ill.App.3d 1009, 1012, 278 N.E.2d 431, 433 (1st Dist. 1971) (stating "whenever an attorney disobeys the lawful instructions of his client he is liable for any loss which ensues from such act."). It is also the law "[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." Ill. R. of Prof. Cond. Rule 1.13. The comment to Rule 1.13 Comment 3 clarifies that, "[w]hen constituents of the organization make decisions for it, the decisions ordinarily must be accepted by the lawyer even if their utility or prudence is doubtful. Decisions concerning policy and operations, including ones entailing serious risk, are not as such in the lawyer's province."

### i. Defendants did not owe a duty to assess the validity of the notes.

An attorney's duty to a client is measured by the representation sought by the client and the scope of the authority conferred. *Simon v. Wilson*, 291 Ill.App.3d 495, 509, 684 N.E.2d 791, 801 (1st Dist. 1997). Here, as alleged, Juris was hired to assist in the officers' drafting of amended and restated (2013) notes for AMG. Juris was not hired to assess the business validity of the notes he allegedly assisted in drafting. *See Roberts v. Heilgeist*, 124 Ill.App.3d 1082, 465 N.E.2d 658, 661, (2d Dist. 1984) (the question of duty is one of law for court to decide). Plaintiff does not allege that the 2013 promissory notes were drafted incorrectly, but rather that the notes were on terms less favorable to AMG. The decision to amend the obligations and the terms of such notes were solely the province of AMG operating through its duly appointed officers. The decision to have AMG issue loans in the first place as a method of deferred

7

compensation was in and of itself a discretionary business decision of AMG acting through its officers. Juris and his firm cannot and should not be liable for AMG's and its officers' business decisions.

      **ii.    The notes provided consideration.**

Assuming, *arguendo*, that Defendants (*i.e.*, Juris) had a duty to assess the business validity of the notes, contrary to Plaintiff/Receiver's assertions, the amended obligations were supported by consideration. It is a central tenet of contract law that consideration is an essential element of a valid contract. *Moehling v. W.E. O'Neil Construction Co.*, 20 Ill.2d 255, 265 (1960). Illinois courts have held that the recital "for value received" in a promissory note is a sufficient allegation that valid consideration exists for a disputed note. *Pedott v. Dorman*, 192 Ill.App.3d 85, 93 (1st Dist. 1989). And, have further held that consideration is presumed in an action on a validly executed promissory note and that no further proof of consideration is required beyond the note itself. *Id.* at 93. The amended obligations as memorized in the 2013 promissory notes include the language "FOR VALUE RECEIVED". (Exs. B at p. 1) (capitalized in original); (Comp. ¶23). The amended obligations were supported by consideration.

Apart from the plain terms of the "For Value Received" language, the amended obligations provided consideration by *improving* the collectability of the notes. The primary term at issue in the amended loan obligations is the extension of the maturity dates to December 31, 2023 when the unamended loan obligations were due on or before December 31, 2015. Extending the life of the loan obligation to the later date allowed the officers a greater period of time to accumulate assets in order to satisfy those obligations during a time when AMG and its officers were essentially becoming insolvent. More importantly, the amended obligations provide a mechanism to pay-off the obligation not included in the unamended obligations. The

8

amended loan obligations required 50% of any AMG profit distribution made to the officer to be paid directly to AMG in satisfaction of the outstanding loan balance. The amended obligations provided a realistic payment structure for an otherwise uncollectible debt. Thus, the officers gave due consideration to AMG in amending their obligations.

      **iii.    Defendants' consideration assessment is entitled to judgmental immunity.**

Even assuming the amended obligations were not supported by consideration and that Juris owed a duty to AMG to make such a determination, Juris' assessment of whether there was adequate consideration to AMG is subject to Illinois' judgmental immunity doctrine. Although the question of whether a lawyer has breached a duty to his client presents a factual question, courts have held that the issue may be decided as a matter of law under the doctrine of judgmental immunity which provides that an attorney will generally be immune from liability, as a matter of law, in providing legal advice, which is the result of an honest exercise of professional judgment. *Navar v. Tribler, Orpett & Meyer, P.C.*, 2015 IL App (1st) 142641-U, ¶ 59 citing *Nelson v. Quarles & Brady, LLP*, 2013 IL App (1st) 123122, ¶ 31, 997 N.E.2d 872 (noting the doctrine "is consistent with Illinois law, which distinguishes between negligence and mere errors of judgment.").

Simply put, the Receiver merely questions the lawyer's judgment as to whether or not the 2013 notes were supported by adequate consideration. If the proposition is debatable, this falls short of a valid basis for actionable malpractice.

**B. Plaintiff has pleaded no actual damages proximately caused by Defendants' purported malpractice.**

Plaintiff has been substantially and fully compensated for the AMG officers' loan obligations by settling its claims regarding those obligations with the AMG officers themselves. Plaintiff's damages theory against Defendants is entirely speculative.

9

To prevail on a claim for legal malpractice, a plaintiff must show that the alleged malpractice caused it actual damages. *Learning Curve International, Inc. v. Seyfarth Shaw*, LLP, 392 Ill.App.3d 1068, 1079, 911 N.E.2d 1073 (1st Dist.2009). "The legal malpractice action places the plaintiff in the same position he or she would have occupied but for the attorney's negligence. The plaintiff can be in no better position by bringing suit against the attorney than if the underlying action had been successfully prosecuted or defended." *Sterling Radio Stations, Inc. v. Weinstine*, 328 Ill.App.3d 58, 64, 765 N.E.2d 56 (1st Dist. 2002).

The existence of actual damages is essential to a cause of action for legal malpractice. *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 226, 856 N.E.2d 389, 395 (2006). Actual damages in a legal malpractice case are not presumed; a plaintiff must plead and prove that she has suffered injuries resulting from the defendant attorney's alleged malpractice. *Sterling Radio Stations, Inc.*, 328 Ill.App.3d at 63, 765 N.E.2d 56. Even if negligence on the part of the defendant attorney is proven, a plaintiff cannot recover for legal malpractice unless she also proves that the attorney's negligence proximately caused her damages. *Nettleton v. Stogsdill*, 387 Ill.App.3d 743, 748, 899 N.E.2d 1252 (2nd Dist. 2008); *Tri–G, Inc.*, 222 Ill.2d at 226, 856 N.E.2d 389. "The existence of actual damages is therefore essential to a viable cause of action for legal malpractice." *Tri–G, Inc.*, 222 Ill.2d at 226, 856 N.E.2d 389. The damages element of a legal malpractice claim may not be based on a guess, conjecture, or speculation. *Glass v. Pitler, 276 Ill. App. 3d 344, 657 N.E.2d 1075* (1st Dist. 1995).

Here, AMG has compromised and extinguished the officers' loan obligations. The Plaintiff/Receiver previously put at issue the validity of the 2013 loan obligations in the AMG Officers' Case. In that case, AMG, through the Receiver, negotiated, at arm's length, and settled what Plaintiff/Receiver felt was the fair value to extinguish those obligations. According to

131536093v3 0977082

Plaintiff/Receiver, "[u]nderstanding the cost of [extensive] discovery and eventual trial and inherent risk of" litigation regarding the enforceability and collection from the AMG officers for their loan obligations, Plaintiff/Receiver negotiated and settled such claims. (Ex. D, ¶¶s 4, 5).

Plaintiff/Receiver's theory assumes that if Juris had abstained from reviewing Aleks' amended note or the other Officer notes, AMG would have been able to enforce and recover on the original loan obligations. This is rank speculation upon a hypothetical. Plaintiff overlooks its obligation to plead and prove that the original loans would have been collectible on their terms, assuming they were enforceable. Actual malpractice damages do not exist if the underlying obligors were insolvent. *Sheppard v. Krol*, 218 Ill. App. 3d 254, 578 N.E.2d 212 (1st Dist. 1991); *Klump v. Duffus*, 71 F.3d 1368, 1375 (7th Cir. 1995). Plaintiff fails to include allegations that such loans would have been collectable from the AMG officers under the terms of those original obligations (*i.e.*, when AMG folded and the officers were personally insolvent).[1]

Moreover, Plaintiff's collectability hurdle is rendered conjectural because AMG has been fully compensated for the loans, whether amended or not. Knowing this, Plaintiff/Receiver vaguely pleaded in its Complaint damages in "the amount of the obligations represented by the revised notes" and does not put forth any identifiable actual damages. (Comp. p. 9, Wherefore paragraph). AMG cannot be put is a better position than it would have been in the "but for" world. *Sterling Radio Stations*, 328 Ill.App.3d at 64, 765 N.E.2d 56 ("The plaintiff can be in no better position by bringing suit against the attorney than if the underlying action had been successfully prosecuted or defended."); *Nettleton*, 387 Ill.App.3d at 752, 899 N.E.2d 1252 ("If the award the plaintiff actually received is the same as or greater than the award she would have

---

[1] The only reason Plaintiff/Receiver was able to obtain the $4 million settlement from the AMG Officers is from coverage under their directors' and officers' insurance policy.

received if the defendant had not been negligent, then the plaintiff cannot be said to have been injured in the manner she alleged and she is not entitled to any damages."). In sum, the fact of any actual damages is at best a matter of speculation. *Cf. Glass v, 276* Ill. App. 3d at 351-354, 657 N.E.2d at 1080-82.

### C. Plaintiff/Receiver does not have standing to bring its current claims.

Federal courts' jurisdiction is limited to "Cases" and "Controversies" as described in Article III, Section 2 of the Constitution. There is no case or controversy if the plaintiff lacks standing to challenge a defendant's alleged misconduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 587 (7th Cir. 2016)

AMG and AlphaMetrix's tort claims no longer belong to the companies or their investors. As noted above, Plaintiff/Receiver has litigated the issue of who has a priority interest in AMG's tort claims in the Receivership Case and this Court ruled that White Oak[2] had a superior perfected security interest in AMG tort claims, including any proceeds of such litigation. (2/16/16 Order, Ex. F). That includes the Plaintiff/Receiver's current purported claims against Defendants. AMG's investors have no interest is the current claims against Defendants. Plaintiff, as the Receiver whose purpose is to serve AMG investors' interests, does not have standing to bring the current claims against Defendants since AMG's investors are not a real party in interest.

WHEREFORE, Defendants pray that this Honorable Court dismiss Plaintiff's amended complaint and/or enter any other relief to the defendant that is equitable and just.

---

[2] White Oak also lacks standing to pursue the current claims against Defendants because they are the product of an illegal assignment of a legal malpractice claim under Illinois law. *See e.g.*, *Brocato v. Prairie State Farmers Ins. Ass'n*, 166 Ill. App. 3d 986, 520 N.E.2d 1200 (4th Dist. 1988).

12

                    Respectfully submitted,
By: _____s/ Michael G. Ruff_____
        One of Defendant's Attorneys

Thomas P. McGarry
Michael G. Ruff
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, IL 60601-1081
312-704-3000

131536093v3 0977082