IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN DRISCOLL, in his capacity as court-appointed receiver of AlphaMetrix Group, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | 16 C 9359 |
| v. | ) ) | Judge John Z. Lee |
| JURIS KINS and DAVIS MCGRATH, LLC, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kevin Driscoll, the court-appointed receiver of AlphaMetrix Group, LLC (AMG), has sued AMG's former lawyers, Defendants Juris Kins and Davis McGrath, LLC ("Davis McGrath"), alleging that they committed legal malpractice against AMG. Defendants have moved to dismiss the complaint for lack of standing pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). For the reasons set forth below, Defendants' motion to dismiss is denied.

## Procedural History

Prior to this litigation, the U.S. Commodity Futures Trading Commission (CFTC) sued Alphametrix, LLC (AML), a CFTC-registered commodity pool operator and commodity trading advisor, and its parent company, AMG, for injunctive relief, disgorgement of misappropriated funds, and monetary penalties. *See CFTC v. AlphaMetrix, LLC*, No. 13-cv-7896 (N.D. Ill. filed Nov. 4, 2013) ("CFTC Action"). The Commission alleged that AML, rather than reinvesting approximately $2.8 million of rebates back into commodity pools as it was obligated to do under rebate agreements with commodity pool participants, misappropriated the funds by unlawfully

transferring them to bank accounts of its parent company, AMG. *See id.*, ECF No. 1, Compl. ¶¶ 15–16. In this way, the CFTC alleged that AMG, which had never been registered with the CFTC, received pool participant funds to which it had no legitimate interest or entitlement. *Id.* ¶ 16. In a letter to pool participants, Aleks Kins,[1] President and Chief Executive Officer of AML and Managing Member of AMG, admitted AML's failure to reinvest the rebates. *Id.* ¶ 19. The CFTC's lawsuit resulted in the appointment of a receiver. *See CFTC Action*, ECF Nos. 33, 257.

The Receiver then filed a separate lawsuit against AML's and AMG's former officers for breach of fiduciary duty and for repayment of outstanding loans. *See Driscoll v. Aleks Kins et al.*, No. 14-cv-2472 (N.D. Ill. filed Apr. 7, 2014) ("Officer Action"). The lawsuit against the officers was resolved by a settlement agreement whereby the officers agreed to pay $4 million to the receivership. *See id.*, ECF No. 96.

**Factual Background**

In the instant case, the Receiver alleges that Aleks's father, Defendant Juris Kins, as well as Juris's law firm, Defendant Davis McGrath, committed legal malpractice as AMG's attorneys from 2005 through December 18, 2013.[2] Compl. ¶ 8, ECF No. 1. Juris, acting as general counsel, advised and represented AMG regarding financial contracts, a dispute with a former employee, and copyright infringement matters. *Id.* During 2012 and 2013, AMG paid Davis McGrath $39,574.64 for services that were rendered to AMG. *Id.* ¶ 10. Davis McGrath also submitted an invoice to AMG dated October 30, 2013, in the amount of $1,735 for work performed in 2013. *Id.*

---

[1] For clarity, the Court will refer to Aleks Kins as "Aleks" and Defendant Juris Kins as "Juris."

[2] The Court will construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in his favor. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

transferring them to bank accounts of its parent company, AMG. *See id.*, ECF No. 1, Compl. ¶¶ 15–16. In this way, the CFTC alleged that AMG, which had never been registered with the CFTC, received pool participant funds to which it had no legitimate interest or entitlement. *Id.* ¶ 16. In a letter to pool participants, Aleks Kins,[1] President and Chief Executive Officer of AML and Managing Member of AMG, admitted AML's failure to reinvest the rebates. *Id.* ¶ 19. The CFTC's lawsuit resulted in the appointment of a receiver. *See CFTC Action*, ECF Nos. 33, 257.

The Receiver then filed a separate lawsuit against AML's and AMG's former officers for breach of fiduciary duty and for repayment of outstanding loans. *See Driscoll v. Aleks Kins et al.*, No. 14-cv-2472 (N.D. Ill. filed Apr. 7, 2014) ("Officer Action"). The lawsuit against the officers was resolved by a settlement agreement whereby the officers agreed to pay $4 million to the receivership. *See id.*, ECF No. 96.

**Factual Background**

In the instant case, the Receiver alleges that Aleks's father, Defendant Juris Kins, as well as Juris's law firm, Defendant Davis McGrath, committed legal malpractice as AMG's attorneys from 2005 through December 18, 2013.[2] Compl. ¶ 8, ECF No. 1. Juris, acting as general counsel, advised and represented AMG regarding financial contracts, a dispute with a former employee, and copyright infringement matters. *Id.* During 2012 and 2013, AMG paid Davis McGrath $39,574.64 for services that were rendered to AMG. *Id.* ¶ 10. Davis McGrath also submitted an invoice to AMG dated October 30, 2013, in the amount of $1,735 for work performed in 2013. *Id.*

---

[1] For clarity, the Court will refer to Aleks Kins as "Aleks" and Defendant Juris Kins as "Juris."

[2] The Court will construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in his favor. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

While Aleks was a Managing Member of AMG from 2005 through December 18, 2013, he appointed the following people as officers of both AMG and AlphaMetrix: (1) Aleks's best friend, Charley Penna, as Chief Risk Offer; (2) Aleks's brother-in-law, George Brown, as Chief Financial Officer; and (3) Aleks's wife's best friend, Geoff Marcus, as Chief Strategic Officer. *Id.* ¶ 7. AMG loaned money to Aleks, Penna, Brown, and Marcus during the course of their employment, and Juris represented AMG in connection with these transactions. *Id.*

Aleks began borrowing money from AMG in January 2006, but the loans were not formally documented and did not have repayment deadlines, interest rates, or default protection for AMG. *Id.* ¶ 11. By March 2012, Aleks's total debt to AMG was at $1,156,877.37. *Id.* By that time, AMG's auditor had become increasingly concerned about the undocumented receivable and requested that the amount be memorialized. *Id.* ¶ 12. To allay the auditor's unease, Juris prepared a promissory note ("2012 Note"), dated and signed on March 15, 2012, that required Aleks to repay $1,156,877.37 in monthly installments of $7,500 with a final balloon payment due on December 31, 2015. *Id.* Aleks began paying AMG $7,500 each month as required by the 2012 Note. That said, however, Alek also took new, undocumented loans from AMG totaling $141,666 during 2013. *Id.* ¶ 13.

From 2011 through September 2013, AMG also made undocumented loans to other officers in the following amounts: (1) $50,000 to Penna; (2) $41,666.66 to Brown; and (3) $223,422 to Marcus. *Id.* ¶¶ 14–15. These undocumented loans were payable on demand. *Id.* Juris was aware of these undocumented loans. *Id.*

During the course of audits in 2011 and 2012, AMG's auditor expressed reservations about the value of AMG as a going concern, and by 2012, AMG was experiencing serious cash flow problems that continued to worsen. *Id.* ¶ 16. By February 2013, AMG and AlphaMetrix

had almost $4.2 million in payables that were over ninety days past due. *Id.* At that point, AMG's primary lender, White Oak Global Advisors, LLC ("White Oak"), claimed AMG was in violation of certain financial covenants, and White Oak received additional guarantees from AMG and other AMG-related entities. *Id.*

Juris knew about the auditor's apprehension regarding AMG's value as a going concern. *Id.* ¶ 17. Juris was also privy to AMG's worsening cash flow problems and White Oak's escalating demands. *Id.* By August 31, 2013, Juris was aware that AMG was insolvent. *Id.*

Nonetheless, in September 2013, Juris prepared amended promissory notes ("Amended Notes") with respect to AMG's previous loans to Aleks, Penna, Brown, and Marcus. These Amended Notes, among other things, eliminated the borrowers' obligations to make monthly payments to AMG and extended the due dates for the payment of the loans' balances from December 31, 2015, to December 31, 2023. *Id.* ¶¶ 19–20, 23. The Amended Notes also eliminated AMG's protection against default in the event that any of the officers were the subject of bankruptcy proceedings. *Id.* ¶¶ 21, 23. The Amended Notes were executed on September 30, 2013. *Id.* ¶¶ 19, 24.

The Receiver alleges that Juris committed legal malpractice against AMG by preparing the Amended Notes without first advising AMG that the amendments stripped AMG of the ability to demand immediate payment of $1.4 million in loans and effectively transferred these assets from AMG's balance sheet to Juris's son, Aleks, and his friends. *Id.* ¶ 25. As a result of Defendants' malpractice, the Receiver contends that AMG has incurred damages in the amount of obligations under the Amended Notes. *Id.* ¶ 33.

**Legal Standards**

Under Rule 12(b)(1), a defendant may move to dismiss claims over which the federal court lacks subject matter jurisdiction. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a facial or factual challenge has been raised. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex Digital*, 572 F.3d at 443). A facial challenge argues that the plaintiff has not sufficiently "*alleged* a basis of subject matter jurisdiction." *Apex Digital*, 572 F.3d at 443. A factual challenge contends that "there is *in fact* no subject matter jurisdiction," even if the pleadings are formally sufficient. *Id.* at 444 (internal quotation marks omitted). In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine whether subject matter jurisdiction exists. *Id.* at 443–44; *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007). If a defendant proffers such evidence, then "[t]he presumption of correctness that we accord to a complaint's allegations falls away," *Commodity Trend Serv., Inc. v. CFTC*, 149 F.3d 679, 685 (7th Cir. 1998), and the plaintiff bears the burden of coming forward with competent proof that standing exists. *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003); *Retired Chi. Police Ass'n v. City of Chi.*, 76 F.3d 856, 862 (7th Cir. 1996).

A motion under Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint. *Christensen v. Cty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). The federal notice pleading standard requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009)). A complaint must provide only "enough detail to give the defendant fair notice of what the claim is and the grounds upon which

it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo*, 526 F.3d at 1083 (internal quotation marks omitted).

In evaluating a Rule 12(b)(6) motion, all well-pleaded allegations in the complaint are accepted as true, and courts must draw all reasonable inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011); *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). In a motion to dismiss, a complaint's factual allegations may be supplemented by "documents that are attached to the complaint," as well as "documents that are central to the complaint and are referred to in it." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see* Fed. R. Civ. P. 10(c).

## <u>Analysis</u>

### I.     Rule 12(b)(1) Motion

As an initial matter, Defendants launch a factual attack on jurisdiction, contending that the Receiver lacks standing to bring the legal malpractice claims. According to Defendants, "AMG and AlphaMetrix's tort claims no longer belong to the companies or their investors." Defs.' Mot. Dismiss at 12, ECF. No. 13. Defendants believe this is so because Judge Joan Humphrey Lefkow in the CFTC Action "ruled that White Oak [a creditor] had a superior perfected security interest in AMG tort claims, including any proceeds of such litigation." *Id*

In support, Defendants rely upon Judge Lefkow's February 29, 2016, Opinion and Order stating that "if and when judgment in or settlement of the *Driscoll* litigation results in cash to the Receiver, White Oak's security interest would have priority over general unsecured creditors." Defs.' Ex. F, 2/29/16 Op. & Order in the CFTC Action, 13 C 7896, at 11. By "*Driscoll* litigation," however, the CFTC court's Opinion and Order was referring to the Officer Action,

6

not this one. *See id.* at 1 (defining the *Driscoll* litigation to be the Officer Action). Thus, the court's ruling does not apply to the claims in this case. What is more, the Receiver correctly points out that the settlement agreement between the Receiver and White Oak in the CFTC Action differentiates White Oak's rights in the Officer Action from its rights with respect to the legal malpractice claims at issue here. *See* Pl.'s Mot. File 2d Surreply, Ex. 1, Settlement Agreement in CFTC Action, No. 13-cv-7896, at 2, ECF No. 22. *Id.* (noting that, "on February 29, 2016, . . . [White Oak] had a first perfected security interest in the proceeds of the *Driscoll* Litigation," while White Oak, among other things, "will receive from the Receivership estate . . . fifty percent (50%) of any proceeds remaining after all costs and attorney fees related to thereto . . . that the Receivership Estate receives [from this instant case].").

More to the point, the fact that White Oak holds a security interest in the proceeds of an action does not necessarily mean that White Oak was assigned the right to bring the claims in the first instance. Indeed, nowhere does the Settlement Agreement assign to White Oak the right to pursue the claims that the Receiver brings in this case.[3] Nor can it, given that Illinois law—which governs the terms of the Settlement Agreement—prohibits the assignment of legal malpractice claims. *See Brandon Apparel Grp. v. Kirkland & Ellis*, 887 N.E.2d 748, 749 (Ill. App. Ct. 2008); *Wilson v. Coronet Ins. Co.*, 689 N.E.2d 1157, 1159 (Ill. App. Ct. 1997); *Clement v. Prestwich*, 448 N.E.2d 1039, 1041 (Ill. App. Ct. 1983). Furthermore, the court in the CFTC Action, which appointed the Receiver, precluded the very circumstances contemplated by Defendants, requiring claimants, such as White Oak, "to work within the framework of the

---

[3] To the extent that Defendant is arguing that, by settling AMG's claims against the officers based on the Amended Notes, the Receiver also extinguished whatever malpractice claims AMG may have had against the Defendants arising from the execution of those notes, this argument also fails for the reasons discussed below.

7

receivership to vindicate their rights, rather than initiate an action in a separate forum." *See* 3/9/17 Order at 4 in the CFTC Action, No. 13-cv-7896, ECF No. 317.

For these reasons, the Court concludes that the Receiver has standing to bring these claims and denies Defendants' Rule 12(b)(1) motion to dismiss.

**II.    Rule 12(b)(6) Motion**

To state a legal malpractice claim, the plaintiff must allege: (1) that the defendant attorney owed the plaintiff a duty of due care arising from the attorney-client relationship, (2) that the defendant breached that duty, and (3) that as a proximate result, the plaintiff suffered injury. *Warnock v. Karm Winand & Patterson*, 876 N.E.2d 8, 12 (Ill. App. Ct. 2007) (citing *N. Ill. Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 837 N.E.2d 99, 106 (Ill. 2005)). In moving to dismiss the Receiver's complaint for failure to state a claim under Rule 12(b)(6), Defendants argue that the Receiver has insufficiently alleged each of these three elements. For the reasons explained below, the Court disagrees.

**A.    Duty**

Under Illinois law, whether the attorney owes a duty to a particular person is a question of law for the determination of the court. *Meriturn Partners, LLC v. Banner & Witcoff, Ltd.*, 31 N.E.3d 451, 456 (Ill. App. Ct. 2015); *Blue Water Partners, Inc. v. Edwin D. Mason, Foley & Lardner*, 975 N.E.2d 284, 295 (Ill. App. Ct. 2012). Further, the attorney for a corporate client owes his duty to the corporate entity, not its individual shareholders, officers, or directors. *Majumdar v. Lurie*, 653 N.E.2d 915, 918 (Ill. App. Ct. 1995); *ABC Trans Nat'l Transport, Inc. v. Aeronautics Forwarders, Inc.*, 413 N.E.2d 1299, 1310 (Ill. App. Ct. 1980); *see Diamond Mortg. Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1248 (7th Cir. 1990) (attorneys owed their duty to corporations and not to a group of managers who allegedly acted against the corporations'

interests and allegedly defrauded the corporations' investors); *Domanus v. Lewicki*, 891 F. Supp. 2d 929, 932 (N.D. Ill. 2012) ("The interest of the corporate client is paramount and should not be influenced by any interest of the individual corporate officials.").

As the corporate counsel for AMG, Juris and Davis McGrath had established an attorney-client relationship with AMG. Defendants do not dispute that, from 2005 through December 18, 2013, Defendants were lawyers for AMG and AlphaMetrix. *See generally* Defs.' Mot. Dismiss. Defendants thus owed a duty to AMG as a corporation, and not to the individual Managing Members.

Defendants do not contest this point, but they argue that their attorney-client duty did not extend to advising AMG of the risks associated with amending the notes in question. Under Illinois law, the relevant factors in determining the existence of a duty include (1) reasonable foreseeability, (2) the likelihood of injury, (3) the magnitude of the burden on the defendant in guarding against the injury, and (4) the consequences of placing that burden on the defendant. *Fitch v. McDermott, Will & Emery, LLP*, 929 N.E.2d 1167, 1184 (Ill. App. Ct. 2010); *Keef v. Widuch*, 747 N.E.2d 992, 997 (Ill. App. Ct. 2001).

*Peterson v. Katten Muchin Rosenman LLP*, 792 F.3d 789, 790 (7th Cir. 2015), is instructive. In that case, the trustee of the bankruptcy estates of certain investment funds filed a malpractice suit against the fund's law firm, alleging that the attorneys failed to advise the funds of the risks associated with the manner in which the law firm had structured a number of loans. The district court granted a motion to dismiss, but the Seventh Circuit reversed, holding that the allegations stated a plausible claim for legal malpractice. *Id.* at 793. In so doing, the court noted that "a lawyer must tell the client which different legal forms are available to carry out the client's business, and how (if at all) the risks of that business differ with the different legal

9

forms." *Id.*; *see also In re Consupak, Inc.*, 87 B.R. 529, 551 (N.D. Ill. 1988) (an attorney should offer legal advice when the client is unaware of potentially adverse legal consequences of a proposed course of action and when offering advice would be in the client's best interest).

Similarly, in this case, Defendants owed a duty to AMG as a corporation to advise it of the risks associated with the way in which the notes were amended. The Receiver alleges that Defendants knew of AMG's cash flow problems when Defendants restructured the Amended Notes. Compl. ¶ 17. Despite this knowledge, Defendants did not advise AMG about the reasonably foreseeable risks associated with terminating Aleks's obligation to provide monthly payments of $7,500 to AMG, *id.* ¶ 20; extinguishing AMG's right to demand immediate loan repayment from Aleks, *id.* ¶ 20; significantly extending the maturity dates of all of the notes, *id.* ¶ 25; and eliminating AMG's protection against default in the event that any of the borrowers were the subject of bankruptcy proceedings, *id.* ¶¶ 21, 23. According to the Receiver, these amendments significantly delayed or encumbered the funds that might have been available to a cash-starved AMG, in exchange for little to no benefit.[4]

Moreover, as AMG's general counsel, it was Defendants' responsibility to advise AMG regarding business transactions, such as the amendments, *id.* ¶ 8, and whatever additional burden Defendants would have experienced in doing so would have been relatively minor. It is true that, once alerted of a risk, an attorney's client can elect to proceed notwithstanding the risks. But the allegations, reasonably construed, claim that Defendants failed to advise AMG of these risks in the first instance even though they had a duty to do so. Accordingly, the Receiver has plausibly

---

[4] The Receiver alleges that the Amended Notes lacked consideration, a fact that Defendants contest with regard to Aleks's Amended Note. *Compare* Compl. ¶ 22 ("[AMG] received nothing of value in exchange for the value of the loans as they existed before Juris assisted in the amendments."), *with* Defs.' Mot. Dismiss, Ex. B (showing that Aleks's Amended Note includes the term "for value received"). But whether any of the Amended Notes in fact were supported by adequate consideration is a question that cannot be resolved on a motion to dismiss.

10

alleged that Defendants owed AMG a duty to provide advice regarding the risks associated with the Amended Notes.

> **B.** **Breach**

Defendants also argue that they did not breach their duty to AMG. In Illinois, the question of whether a lawyer has exercised a reasonable degree of care and skill in representing and advising his client is one of fact. *Brown v. Gitlin*, 313 N.E.2d 180, 182 (Ill. App. Ct. 1974). Breach of duty generally must be determined through expert testimony and usually cannot be decided as a matter of law. *Gelsomino v. Gorov*, 502 N.E.2d 264, 267 (Ill. App. Ct. 1986); *see Barth v. Reagan*, 564 N.E.2d 1196, 1200 (Ill. 1990) ("[T]he standard of care against which the attorney defendant's conduct will be measured must generally be established through expert testimony.").

Although Defendants concede that determining breach of duty is a factual inquiry, they argue that they, nonetheless, should be afforded immunity under the "judgmental immunity" doctrine. *See* Mot. Dismiss 9. But the term "judgmental immunity" is a bit of a misnomer. *See Certain Underwriters at Lloyd's, London v. Johnson & Bell, Ltd.*, case no. 10-cv-07151, 2013 WL 6490234, at * 3 (N.D. Ill. Dec. 10, 2013); *Nelson* v. *Quarles & Brady LLP*, 997 N.E.2d 872, 880–81 (Ill. App. Ct. 2013) (stating that "no Illinois case has used that phrase"). It is simply the legal principle that "an attorney is liable to his client only when he fails to exercise a reasonable degree of care and skill; he is not liable for mere errors of judgment." *Certain Underwriters*, 2013 WL 6490234, at *3 (quoting [*Smiley v. Manchester Ins. & Indem. Co.,* 375 N.E.2d 118, 122 (Ill. 1978)](#)). "Whatever the label, at its core, the rule dictates that attorneys do not breach their duty to clients, as a matter of law, when they make informed, good-faith tactical decisions." *Nelson*, 997 N.E.2d at 881.

Given the Receiver's allegations that the Amended Notes provided cash-strapped AMG with no benefit and dramatically increased risk, the Receiver has sufficiently alleged at this stage that Defendants' failure to advise AMG of the risks posed by the Amended Notes was neither informed nor tactical.

### C. Damages

Lastly, Defendants argue that the Receiver has failed to allege that AMG suffered actual damages. As stated above, to state a legal malpractice claim, the plaintiff must allege that, as a proximate result of the defendant's breach of a duty, the plaintiff suffered injury. *See Warnock*, 876 N.E.2d at 12. For purposes of a legal malpractice action, a client is not considered to be injured unless he has suffered a loss for which he may seek monetary damages. *N. Ill. Emergency Physicians*, 837 N.E.2d at 107 (citing *Griffin v. Goldenhersh*, 752 N.E.2d 1232, 1238 (Ill. App. Ct. 2001)); *see Palmros v. Barcelona*, 672 N.E.2d 1245, 1247 (Ill. App. Ct. 1996).

First, Defendants argue that, by settling its claims based upon the Amended Notes against the officers, the Receiver relinquished whatever damages AMG may have sustained as a result of Defendants' alleged legal malpractice related to those same notes. But Juris and Davis McGrath were not defendants in the Officer Action or parties to the Settlement Agreement; therefore, the Settlement Agreement did not release the Receiver's malpractice claims against them. Defendants may be correct insofar as they contend that AMG is not entitled to a double-recovery, but it appears that the Settlement Agreement did not provide AMG with the full extent of the damages it allegedly suffered as a result of the Amended Notes. *See* Pl.'s Mem. Opp'n Mot. Dismiss at 13–14. And, in any event, this issue is a factual one that requires discovery. Of course, it will be the Receiver's burden in this case to prove the amount of actual and consequential damages flowing from Defendants' purported legal malpractice. But, at least at

this stage, the Receiver plausibly alleges that AMG suffered actual damages as a result of Defendants' legal malpractice.

Second, Defendants argue that actual damages are speculative because it is unknown whether the officers were insolvent, or, in other words, whether they would have been able to pay the full amounts owed. *See Nettleton v. Stogsdill*, 899 N.E.2d 1252, 1260 (Ill. App. Ct. 2008) ("If the award the plaintiff actually received is the same as or greater than the award she would have received if the defendant had not been negligent, then the plaintiff cannot be said to have been injured in the manner she alleged and she is not entitled to any damages."). But damages are considered legally speculative only if their existence itself is uncertain, not if the amount is difficult to ascertain or the likelihood of recovery is low. *See Tamayo*, 526 F.3d at 1084 (citing *Profit Mgmt. Dev., Inc. v. Jacobson, Brandvik & Anderson, Ltd.*, 721 N.E.2d 826, 842 (Ill. App. Ct. 1999)). Additionally, the Receiver alleges that, in 2013, prior to the amendment of the notes, Aleks had paid monthly payments to AMG. *See* Compl. ¶ 13. This leads to a reasonable inference that Aleks was solvent at the time. *See Cole.*, 634 F.3d at 903 (when considering a Rule 12(b)(6) motion, a court must draw all reasonable inferences from the allegations in a plaintiff's favor). Similarly, because the other officers' loans were for relatively smaller amounts and they had agreed to the terms of the notes, it is also reasonable to infer that they had the ability to repay what they owed. *See id.* ¶¶ 14–15 (alleging the loan to Penna was $50,000), Brown was $41,666, and Marcus was $223,422). Accordingly, the Court concludes that the Receiver has adequately alleged actual damages to survive a motion to dismiss.

**Conclusion**

For the reasons stated herein, the Receiver has plausibly alleged a legal malpractice cause of action against Defendants, and Defendants' motion to dismiss the complaint [13] is denied.

**IT IS SO ORDERED.**          **ENTERED  9/18/17**

_____
**John Z. Lee
United States District Judge**