IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN DRISCOLL, in his capacity as court-appointed receiver of AlphaMetrix Group, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | 16 C 9359 |
| v. | ) ) | Judge John Z. Lee |
| JURIS KINS and DAVIS MCGRATH, LLC, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kevin Driscoll, the court-appointed receiver of AlphaMetrix Group, LLC ("AMG"), has sued AMG's former lawyers, Defendants Juris Kins and Davis McGrath, LLC ("Davis McGrath"), alleging that they committed legal malpractice against AMG. Pursuant to Federal Rule of Civil Procedure ("Rule") 16(c)(2)(A), Defendants have moved to resolve the disputed legal issue of whether Defendants are entitled to a set-off under the Illinois Joint Tortfeasor Contribution Act ("Contribution Act"). Defendants argue that they are entitled to a $4 million set-off from any judgment against them in this case due to a previous settlement agreement between Receiver and former officers of AMG. For the reasons set forth below, the Court holds that the Contribution Act does not apply here.

**Procedural History**

Prior to this litigation, the U.S. Commodity Futures Trading Commission ("CFTC") sued AlphaMetrix, LLC ("AML"), a CFTC-registered commodity pool operator and trading advisor, and its parent company, AMG. *See CFTC v. AlphaMetrix, LLC*, No. 13-cv-7896 (N.D. Ill. filed Nov. 4, 2013) ("CFTC Action"). The CFTC alleged that AML, rather than reinvesting approximately $2.8 million of rebates back into commodity pools as it was obligated to do by agreements with pool participants, unlawfully transferred them to its parent company, AMG. *See id.*; CFTC Action Compl. ¶¶ 15–16, ECF No. 1. The CFTC's lawsuit resulted in the appointment of a receiver. *See* CFTC Action, ECF Nos. 33, 257.

The Receiver then filed a separate lawsuit against Aleks Kins,[1] President and Chief Executive Officer of AML and Managing Member of AMG, and other former officers of AML and AMG, for repayment of outstanding loans and breach of fiduciary duty. *See Driscoll v. Aleks Kins et al.*, No. 14-cv-2472 (N.D. Ill. filed Apr. 7, 2014) ("Officer Action"). The Receiver alleged that the officers failed to repay outstanding debts to AMG or implement spending controls, among other misconduct related to AMG's finances. Officer Action Am. Compl. ¶¶ 63, 72, 79–81, 85, 87, 90, 93, ECF No. 46.

The Officer Action was resolved by a settlement agreement, whereby the claims were dismissed, a finding of good faith settlement was entered, and the officers agreed to pay $4 million to the receivership. *See* Officer Action, ECF No. 96. The

---

[1] For clarity, the Court will refer to Aleks Kins as "Aleks" and Defendant Juris Kins as "Juris."

parties stipulated that the officers would not be liable to third-party defendants if the Receiver should pursue claims against third-parties, and that the "Receiver shall reduce the amount of any judgment . . . entered in the Receiver's . . . favor against any third-party for injuries that is awarded for the actions or omissions of a Defendant while they served as a manager, member, officer, employee or agent of an AMG Entity by the amount the Receiver receives from the Defendants pursuant to th[e] agreement." Defs.' Ex. A, Settlement Agreement ¶ 7, ECF No. 54-1.

## **Factual Background**[2]

In the instant case, the Receiver alleges that Aleks's father, Defendant Juris Kins, as well as Juris's law firm, Defendant Davis McGrath, committed legal malpractice as attorneys for AMG, which they represented from 2005 through December 18, 2013. Compl. ¶ 8, ECF No. 1. As a Managing Member of AMG, Aleks appointed his friends Charley Penna, George Brown, and Geoff Marcus as officers of AMG and AML. *Id.* ¶ 7. AMG loaned money to Aleks, Penna, Brown, and Marcus during the course of their employment, and Juris represented AMG in connection with these transactions. *Id.* ¶ 8.

Between January 2006 and March 2012, Aleks took $1,156,877.37 in undocumented loans from AMG without any repayment deadlines, interest rates, or default protection for AMG. *Id.* ¶¶ 11–12. In March 2012, AMG's auditor requested that the amount be memorialized. *Id.* Juris then prepared a promissory note, dated

---

[2] Because Defendants have filed this motion asking the Court to decide a question of law, the Court refers to the facts alleged in Plaintiff's complaint and accepts them as true. *See Otis v. Demarasse*, 886 F.3d 639, 644 (7th Cir. 2018).

3

and signed on March 15, 2012, requiring Aleks to repay $1,156,877.37 in monthly installments of $7,500 with a final balloon payment due on December 31, 2015. *Id.* Aleks began paying AMG $7,500 each month, but he took out an additional $141,666 in undocumented loans from AMG during 2013. *Id.* ¶ 13. From 2011 through September 2013, AMG also made undocumented loans to Penna, Brown, and Marcus, which were payable on demand. *Id.* ¶¶ 14–15. Juris was aware of these undocumented loans. *Id.*

During the course of audits in 2011 and 2012, AMG's auditor expressed reservations about the value of AMG as a going concern. *Id.* ¶ 16. In February 2013, AMG's primary lender, White Oak Global Advisors, LLC ("White Oak"), claimed AMG was in violation of certain financial covenants, and received additional guarantees from AMG. *Id.* Juris was aware of the auditor's apprehension regarding AMG's value as a going concern and White Oak's escalating demands. *Id.* ¶ 17. By August 31, 2013, Juris knew that AMG was insolvent. *Id.*

Nonetheless, in September 2013, Juris prepared amended promissory notes with respect to AMG's previous loans to Aleks, Penna, Brown, and Marcus that eliminated the borrowers' obligations to make monthly payments to AMG, eliminated AMG's protection against default, and extended the due dates for repayment of the loans. *Id.* ¶¶ 19–21, 23. The Amended Notes were executed on September 30, 2013. *Id.* ¶¶ 19, 24.

The Receiver alleges that Juris committed legal malpractice against AMG by preparing the Amended Notes without first advising AMG that the amendments

4

stripped AMG of the ability to demand immediate payment of $1.4 million in loans and effectively transferred these assets from AMG's balance sheet to Juris's son, Aleks, and his friends. *Id.* ¶ 25. As a result of Defendants' malpractice, the Receiver contends that AMG has incurred damages in the amount of the obligations under the Amended Notes. *Id.* ¶ 33.

## Analysis

Defendants seek a determination of whether the Contribution Act applies to any judgment or settlement in this case. The Contribution Act provides that "[w]hen a release or covenant not to sue . . . is given in good faith to one or more persons liable in tort arising out of the same injury . . . it reduces the recovery on any claim against the others to the extent of any amount stated in the release." 740 Ill. Comp. Stat. 100/2(c). Under the Contribution Act, "liability in tort . . . has been construed to mean 'potential' tort liability." *Joe & Dan Int'l Corp. v. U.S. Fid. & Guar. Co.*, 533 N.E.2d 912, 918 (Ill. App. Ct. 1989); *see Doyle v. Rhodes*, 461 N.E.2d 382, 387 (Ill. 1984).

In the Officer Action, the Receiver had sued the officers for breach of fiduciary duty and breach of contract. Under Illinois law, it is well established that a breach of fiduciary duty is not a tort. *Raab v. Frank*, 124 N.E.3d 544, 554 (Ill. App. Ct. 2019); *see Kinzer v. City of Chi.*, 539 N.E.2d 1216, 1220 (Ill. 1989). Moreover, the Contribution Act does not apply to claims based on contract law. *See Jackson Nat'l Life Ins. Co. v. Gofen & Glossberg, Inc.*, 882 F. Supp. 713, 723 (N.D. Ill. 1995). Accordingly, the issue at hand is whether the officers could have been liable in tort for their actions against AMG's financial interests.

5

Defendants suggest tort theories, but some are precluded by Illinois's economic loss doctrine. In *Moorman Manufacturing Co. v. National Tank Co.*, the Illinois Supreme Court held that claims for purely economic losses must be brought pursuant to contract, not tort, law. 435 N.E.2d 443, 448 (Ill. 1982). "When only economic loss is incurred, the plaintiff may only raise contract theories even if the defendant's alleged conduct constituted a tort as well as a breach of contract." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 369 (7th Cir. 1992) (quoting *Bethlehem Steel Corp. v. Chi. E. Corp.*, 863 F.2d 508, 523 (7th Cir. 1988)). *Collins v. Reynard* clarifies that the "economic loss doctrine" is meant to bar tort claims "rooted in disappointed contractual or commercial expectations." 607 N.E.2d 1185, 1188 (Ill. 1992). The loss at issue in the Officer Action was purely economic. *See* Officer Action Compl. ¶¶ 66, 70, 74, 77, 79, 84, 86, 89, 92, 95 (seeking repayment of loans plus interest). Thus, under the economic loss doctrine, the Receiver could not have brought tort claims in the Officer Action.

Defendants argue that the Officers could have been liable under general negligence theory because they allegedly breached their "more general and less scrutinized duty of reasonable care to their company." Defs.' Reply Supp. Am. Rule 16(c) Mot. at 3, ECF No. 62. In support, Defendants rely on *Jackson National Life Insurance Co. v. Kendig*, No. 97-cv-7934, 1999 U.S. Dist. LEXIS 16645, at *17 (N.D. Ill. Oct. 25, 1999).

In *Jackson*, a bankruptcy trustee, on behalf of unsecured creditors, brought breach-of-fiduciary-duty and negligence claims against a Delaware corporation's

6

officer, among others. *Id.* at \*13–17. The district court affirmed the bankruptcy court's dismissal of the trustee's claims for failure to state a claim, holding that an officer does not owe a fiduciary duty to unsecured creditors and any negligence claim against the officer was barred under *Moorman*. *Id.*

Defendants' reliance on the court's statement that "officers of a corporation must use due care and are liable for their negligence in conducting the affairs of the corporation," *see id.* at \*17, is inapposite for two reasons. First, in so stating, the *Jackson* court was applying Delaware, not Illinois law. *Id.* at \*17. Second, the statement is pure *dicta* because the *Jackson* court clearly held that any negligence claim was barred by the economic loss doctrine, *see id.* at \*16–17.

In addition, Defendants also contend that the *Moorman* doctrine is inapplicable to intentional torts, such as tortious interference with contract or prospective advantage. *See In re Chi. Flood Litig.*, 680 N.E.2d 265, 275 (Ill. 1997). In order to be liable for either of these torts, however, the officers' alleged interferences must have been directed at a third party. *Douglas Theater Corp. v. Chi. Title & Trust Co.*, 681 N.E.2d 564, 567–69 (Ill. App. Ct. 1997) (stating "[i]t is settled law that a party cannot tortiously interfere with his own contract; the tortfeasor must be a third party to the contractual relationship", and holding that tortious interference with prospective business advantage "must be directed toward a third party"). Recognizing this hurdle, Defendants postulate that the officers could have been held liable for interfering with *each other's* contracts and prospective economic relationships with AMG. Nothing in the complaint in the Officer Action or in this

7

action, however, supports the theory that the officers induced each other to breach their loan agreements or their business relationships with AMG. No matter how Defendants creatively reframe the Receiver's allegations, the claims could not have been brought in tort.

Next, Defendants argue that the settlement agreement in the Officer Action requires that the Contribution Act apply in this case. In the order approving the settlement agreement in the Officer Action, Judge Milton Shadur stated that the agreement was made "in good faith pursuant to the Illinois Joint Tortfeasor Contribution Act" and that "to the maximum extent allowed by applicable state or federal law, the [c]ourt bar[red] and discharge[d] any and all claims for contribution." Defs.' Ex. B, Dismissal Order ¶¶ E.1, E.2, E.3, ECF No. 54-2. Defendants argue that this language signifies that Judge Shadur affirmatively concluded that the Contribution Act applies.

The Court disagrees. Judge Shadur merely found that the settlement in the Officer Action was made in good faith, a finding that would be relevant if a future court found the Contribution Act applicable. As explained, the Court has concluded that the Contribution Act is inapplicable because the officers were not potentially liable in tort.

Lastly, Defendants point to additional language in the settlement agreement in the Officer Action to support that a set-off is required. The language provides in pertinent part:

> The Receiver shall reduce the amount of any judgment . . . award entered in the Receiver's . . . favor against any third-

8

> party for injuries that is award for the actions or omission of a Defendant . . . by the amount the Receiver receives from the Defendants pursuant to this settlement agreement.

*See* Defs.' Ex. A, Settlement Agreement ¶ 7.

This language clearly and unambiguously requires a reduction in the amount of judgment awarded to the Receiver against any third-party for "the actions or omissions of a Defendant."[3] *Id.* The settlement agreement also unambiguously states that "this Agreement is executed without reliance upon any statement or representation of any person or party, or their representatives other than those set forth herein." *Id.* ¶ 14. Because the settlement agreement, including its integration clause, is unambiguous, the Court need not look to the extrinsic evidence provided by Defendants. *See Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 886 (1999).

Rather than seeking damages for the acts and omissions of the defendants in the Officer Action, the Receiver in this case is seeking damages for the acts and omissions of Juris and Davis McGrath. Specifically, the Receiver has sued Juris and Davis McGrath for legal malpractice based on their failure to advise AMG of the risks associated with the amended notes. Accordingly, the Court finds Juris and Davis McGrath's invocation of the settlement agreement's language unpersuasive. The Contribution Act does not apply, and no set-off is warranted.

---

[3] The settlement agreement defined "Defendant" as Aleks A. Kins, Charley Penna, George Brown, or Geoff Marcus. *Id.* at 1.

9

## Conclusion

For the reasons stated herein, the Court denies Defendants' motion pursuant to Federal Rule of Civil Procedure 16(c)(2)(A) [54]. The Court holds that: (1) the Illinois Joint Tortfeasor Contribution Act does not apply here, and (2) Defendants are not entitled to a $4 million set-off from any judgment against them in this case due to a previous settlement agreement between Receiver and former officers of AMG.

**IT IS SO ORDERED.**  **ENTERED: 8/26/19**

_____
**John Z. Lee**
**United States District Judge**

10